55 N.J. Super. 58 (1959)
149 A.2d 797
THE KEY AGENCY, A CORPORATION, PLAINTIFF,
v.
CONTINENTAL CASUALTY COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 20, 1959.
*60 Mr. Daniel G. Gallop, attorney for plaintiff.
Mr. Louis Auerbacher, Jr., attorney for defendant.
SCHERER, J.S.C.
This case comes before the court on the plaintiff's motion for summary judgment and the defendant's cross-motion for a judgment on the pleadings. R.R. 4:58-3; R.R. 4:12-3. Both sides agree that there is no dispute as to any material fact and that the problem is one of law only. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954); Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63, 67 (1959).
Plaintiff furnished policies of workmen's compensation and public liability insurance to General Builders, Inc. (hereinafter called "General") in connection with work being performed by the latter on various public contracts and, in particular, two contracts for the building of public schools *61 in this state for the boards of education of Franklin Park and Kinnelon. General apparently has defaulted on its contracts and has not paid the plaintiff the amount due for these premiums. The first three counts of the complaint were dismissed by the plaintiff at the pretrial conference. The sum alleged to be due from General to the plaintiff for the premiums has either been paid by plaintiff or it is responsible for the payment. This amount is fixed in the pretrial order at $2,847.15.
These contracts undertaken by General, being for public work, required performance bonds, and these were furnished by the defendant surety company to General. N.J.S. 2A:44-143. The plaintiff's suit, however, is not against the surety on the bonds, but asserts a right to recover pursuant to N.J.S. 2A:44-147 (the citation appearing in the original law and N.J.S.A. and being used in this opinion  the correct section number being 148). This statute provides that all moneys paid by any public agency pursuant to a contract for a public improvement shall constitute a trust fund in the hands of the contractor until all claims "for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid." Suit is brought against the surety company because the latter has received funds from the Board of Education of Kinnelon in connection with the work done on that school, and probably will receive funds from the Board of Education of Franklin Park for work and materials on that contract. The defendant holds assignments from the contractor of all of its right, title and interest in and to all moneys due or to grow due on these contracts.
It is apparent that the plaintiff has no remedy under the Municipal Mechanics' Lien Act (N.J.S. 2A:44-125 et seq.) or the Bond Act (N.J.S. 2A:44-143 et seq.). These statutes delimit the items for which a municipal mechanic's lien can be filed or for which a surety is liable on its bond if the contractor defaults and fails to pay. The item for which the plaintiff claims is not mentioned in either of these statutes.
*62 It is the plaintiff's contention that the Trust Fund Act (N.J.S. 2A:44-147) was passed to enlarge the class of claims payable out of the funds generated from the performance of a municipal contract beyond those enumerated in the Municipal Mechanics' Lien Act and the Bond Act. It is argued that the use of the words "other charges" in the Trust Fund Act shows a legislative intent so to do.
The reasons for the enactment of the last cited statute are set forth in Stulz-Sickles Co. v. Fredburn Const. Corp., 114 N.J. Eq. 475 (Ch. 1933). With respect to whether the words "other charges" may be construed to mean claims other than those specifically enumerated in the other two statutes, the court said, 114 N.J. Eq. at page 479, that the moneys in the hands of the contractor constituted a fund "for the benefit of all parties having claims against it," citing numerous cases. It is evident from this language that the court believed the intent of the Trust Fund Act was to provide an additional remedy to those persons who would have had claims under either or both of the other two statutes. See also, National Surety Corp. v. Barth, 11 N.J. 506 (1953), where the court said that the purpose of the Trust Fund Act was "to give laborers and materialmen protection in the form of a trust" impressed for their benefit upon moneys paid pursuant to the provisions of any public improvement contract. There is no indication in the opinions in the Stulz-Sickles or National Surety cases that the courts believed that the statute was intended to enlarge the class of persons who were given protection by the other two statutes.
Plaintiff relies principally upon Wilson v. Robert A. Stretch, Inc., 44 N.J. Super. 52 (Ch. Div. 1957). There the court, referring to the Trust Fund Act, said that the class of persons entitled to the protection of that statute was more extended and general than those referred to in either the Bond Act or the Municipal Mechanics' Lien Act. This statement, however, may be regarded as dictum, since the opinion states that the sole question for consideration was whether the plaintiff was entitled to a lien under N.J.S. *63 2A:44-128. Moreover, that case states the well-settled doctrine that statutes creating liens, being in derogation of the common law where the right to a mechanic's lien was unknown, must be strictly construed. Friedman v. Stein, 4 N.J. 34 (1950); Carlo v. Okonite-Callender Cable Co., 3 N.J. 253 (1949). To strictly construe this statute is to come to the conclusion that in using the words "other charges" there were intended to be included only such claims as were the proper subject of a lien under the Municipal Mechanics' Lien Act or a claim against the surety under the Bond Act.
While there is no doubt that these three statutes relate to the same subject and are in pari materia and must be read together (Wilson v. Robert A. Stretch, Inc., supra), doing this does not do violence to the conclusion herein reached. The result of a holding otherwise would be to permit persons who have no claims against the fund under the lien act to require the contractor to pay their claims out of the funds received from the municipal body, thus diluting the fund to the detriment of those persons who have valid claims on the fund for labor or materials as specified in the Municipal Mechanics' Lien Act. The very purpose of the Trust Fund Act, as set forth in the Stulz-Sickles case, supra, was to require that moneys paid to a contractor under a municipal contract should be applied for the benefit of those persons entitled to a lien on the fund. In other words, if the money was paid out before a claimant filed his lien, he could still look to the contractor for payment because the latter is required by the Trust Fund Act to hold the money for such claimant. It was because contractors were using money derived from municipal jobs to pay other creditors or materialmen for supplies furnished on other jobs that the statute was passed, limiting payments from each fund to the claims arising out of the performance of labor and the furnishing of materials on that particular job. To require adherence to the mandate of the Trust Fund Act, the Legislature, in N.J.S. 2A:102-12, made it a misdemeanor for a contractor to use such moneys for any *64 purpose other than for labor and materials and such other proper charges as are incurred in connection with the performance of a particular contract for public improvement.
While there is no fund here in the hands of the contractor because it has defaulted and the surety company has been required to take over and finish each of the jobs, the plaintiff argues that since the surety is entitled under its assignments to receive any funds due the contractor from these jobs, as assignee it holds the funds as a trust fund, and that whatever remedies plaintiff had under the Trust Fund Act against the contractor, it has against the surety. Since I conclude that the plaintiff is not entitled to the benefit of the Trust Fund Act, a finding on this point is unnecessary. However, it is probable, under the doctrine of equitable subrogation, that the surety company's claim would be superior to the claim of the plaintiff even if the latter were within the class protected by the Trust Fund Act. The affidavits reveal that on the Kinnelon job the defendant has received some money from the board of education, but has paid out $32,000 more than it received in completing the work. On the Franklin Park job it has paid out $112,850, and to date has received nothing, although it is probable that some funds will be coming to it. As was stated in the Stulz-Sickles case, supra, the right of subrogation of the surety exists where it has paid claims guaranteed by it on behalf of the contractor.
The plaintiff's motion for summary judgment, therefore, will be denied, and the defendant's motion for judgment on the pleadings will be granted, dismissing the complaint.
A judgment may be presented in accordance with these conclusions.